**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JON CHRISTIAN AMBERSON, *Appellant* | § § § § | Case No. SA-21-CV-00496-XR |
| -vs- | § § | Bankruptcy Case No. 20-51324-CAG |
| JAMES ARGYLE MCALLEN, EL RUCIO LAND AND CATTLE COMPANY, INC., SAN JUANITO PARTNERSHIP, LTD., AND MCALLEN TRUST PARTNERSHIP, LTD.        *Appellees* | § § § § § § § | Appeal of Adv. No. 20-05060-CAG |

## ORDER

This civil action is before the Court on appeal from the United States Bankruptcy Court for the Western District of Texas. For the reasons stated below, the judgment of the bankruptcy court is **AFFIRMED** and the appeal is **DISMISSED**.

## BACKGROUND

On July 20, 2020, Appellant Jon Christian Amberson filed for bankruptcy under Chapter 11 of the Bankruptcy Code (the "Code"). Thereafter, Appellees James Argyle McAllen ("McAllen"), El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership (collectively, the "McAllen Parties") initiated an Adversary Proceeding against Amberson, alleging that certain damages in a previous Arbitration Award entered against Amberson for false billing practices before his bankruptcy filing were nondischargeable debts. ECF No. 2-2 at 17–21.

The McAllen parties then moved for summary judgment, arguing that the Arbitration Award was entitled to preclusive effect based on the doctrine of collateral estoppel. ECF No. 2-2

at 132–33. Amberson argued that the Arbitration Award should not be given preclusive effect because of the "disclaimer" it contained:

> [T]his Award does not constitute formal Findings of Fact and Conclusions of Law as might be entered by a trial court. The parties agreed to a "reasoned award." Thus, while the Arbitrator below enters his determinations as to [the false billing] claims by summarizing the elements of each claim, such is not intended as formal findings and/or conclusions.

ECF No. 2-2 at 62. The Bankruptcy Court noted Amberson's objection to collateral estoppel based on the "reasoned award" language, but still concluded that the Arbitration Award supported a finding that the damages awarded in connection with the false litigation expenses ("False Litigation Expenses") were nondischargeable debts under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4). *See id.* at 688–90, 694–97.

On appeal, Amberson argues that the Bankruptcy Court erred in adopting the arbitrator's narrative as findings of fact in support of its nondischargeability ruling. *See* ECF No. 6. Whether the Bankruptcy Court erred depends, of course, on both the facts adopted by the Bankruptcy Court and the legal tests for collateral estoppel and nondischargeability. Accordingly, the Court will summarize both the factual background leading to Arbitration Award and the portions of the Bankruptcy Court's opinion relating to the False Litigation Expenses.

## I.      The Forest Oil Litigation and Subsequent Arbitrations

The following facts are drawn from Judge Biery's order affirming the Final Judgment in favor of Appellees. *See Amberson v. McAllen*, No. SA-20-CV-01193-FB, 2021 WL 4760387, at *12 (W.D. Tex. Sept. 29, 2021).

> [A]ppellee James McAllen (hereinafter "Mr. McAllen") is an eleventh-generation rancher who oversees the historic McAllen Ranch, a working cattle ranch, located in Hidalgo County, Texas. For decades, the McAllen Ranch leased its mineral rights to operators such as Forest Oil Corporation ("Forest Oil"), and in the fall of 2004, Mr. McAllen was advised that Forest Oil was secretly burying, on the McAllen Ranch, the highly toxic waste that resulted from its operations instead

of properly disposing of it. In addition, Mr. McAllen found out that Forest Oil had donated used piping to the ranch, for a conservation project, but failed to tell him it was radioactive. This revelation caused Mr. McAllen immediate concern for the health of his family, his workers, and his ranch. Mr. McAllen once again turned to his son-in-law and attorney, appellant Jon Christian Amberson, for help as Mr. Amberson had represented Mr. McAllen and the McAllen Ranch in previous matters which even included a prior dispute with Forest Oil.

On January 31, 2005, Mr. Amberson, through his firm, appellant Jon Christian Amberson, P.C., filed suit on behalf of [the McAllen Parties] against Forest Oil in the state district court in Hildago County. Within weeks of filing suit, Mr. Amberson began billing Mr. McAllen for charges which were never incurred. In fact, during the Amberson/McAllen dispute, the arbitrator discussed 42 charges found to be fraudulent which included charges for supposed bonds, retainers and arbitration fees and resulted in an award of $2,583,700.00 in actual damages.

      . . . .

Mr. Amberson also went to great lengths to hide his fraudulent charges from the arbitration panel and opposing counsel in the aforementioned arbitration proceeding with Forest Oil. Because Mr. McAllen was seeking attorneys' fees from Forest Oil, Mr. Amberson's invoices to Mr. McAllen were discoverable. Mr. Amberson did not disclose his actual invoices but instead created and "produced over 450 pages of purported monthly invoices, 'show bills,'" with his fraudulent charges removed. The false monetary requests for bonds and retainers were only some of the tactics Mr. Amberson used to obtain money from Mr. McAllen.

Mr. Amberson also borrowed large sums of money which Mr. McAllen collateralized based upon the representation that the loans were for funding litigation and arbitration expenses. However, Mr. Amberson failed to repay these loans. The first of these loans was a line of credit with First Community Bank that Mr. Amberson, through his Firm, established. The principal on this line of credit was close to $2 million by 2012. . . . Mr. McAllen [later] borrowed $2 million [to pay] off the loan on [Mr. Amberson's behalf], not knowing that three days earlier, Mr. Amberson "had secretly filed for divorce from [Mr.] McAllen's daughter."

A loan was obtained by Mr. Amberson in 2011 from Jefferson Bank in the original sum of $1.75 million which was increased to $2.25 million. This loan was represented to Mr. McAllen as needed to finance the Forest Oil matter. Mr. McAllen fully collateralized this loan with certificates of deposit owned by him and his wife.

      . . . .

From October 31, 2011, through November 19, 2011, the Forest Oil matter was arbitrated before a panel of three arbitrators. Mr. Amberson was co-counsel

3

with two other firms but [did] not take the lead in presenting evidence. The panel ruled in favor of the McAllen Parties on February 29, 2012, and awarded $15.5 million on actual damages, $500,000 in exemplary damages, and over $5 million in attorneys' fees. The panel later awarded an additional $1,764,428 in attorneys' fees. The arbitration award was confirmed on October 9, 2012, by a Harris County district court and a final judgment in favor of the McAllen parties was entered. The Final Judgment was affirmed by the First Court of Appeals on July 24, 2014, and by the Texas Supreme Court on April 28, 2017. The McAllen Parties subsequently collected a $25 million supersedeas bond posted by Forest Oil for the appeal. By that time, the McAllen Parties had spent over $15 million in fees and expenses.

On January 23, 2015, Mr. Amberson filed suit against Mr. McAllen in Hidalgo County district court to recover a contingent fee despite billing and collecting $2.34 million in hourly fees from the McAllen Parties. The parties agreed to abate the proceeding while the Forest Oil appeal was pending. After the Texas Supreme Court affirmed the Forest Oil judgment, Mr. Amberson reinstated his lawsuit against Mr. McAllen. Counterclaims for fraud and breach of fiduciary duty, among others, for Mr. Amberson's fraudulent charges and loans . . . were asserted by the McAllen parties. . . . Judge Luis Singleterry, the Hidalgo district court judge, ruled on two occasions that all of the parties' claims. . . were subject to arbitration. Subsequently, Mr. Amberson proposed that Tom Collins (the "Arbitrator") serve as arbitrator, and Mr. McAllen agreed.

*Id.* at *2–6.

The arbitration hearing spanned over ten days in June and July of 2019. ECF No. 2-2 at 33. After hearing testimony from 16 live witnesses and admitting approximately 325 exhibits, the Arbitrator issued as 53-page, single-spaced Arbitration Award on April 30, 2020. *Id.* at 32–84. The Arbitrator rejected Amberson's contingent fee claim for multiple reasons, including breach of his fiduciary duties. *Id.* at 14. With respect to the claims for False Litigation Expenses, the Arbitrator awarded the McAllen Parties $2,583,700.00, concluding that Amberson had engaged in a breach of fiduciary duties, fraud, and violations of the Texas Theft Liability Act ("TTLA"), and conversion. *Id.* at 62–64. As is relevant here, he also awarded the McAllen Parties damages in connection with the First Community Bank ("FCB") loan ($2,652,953.13), a promissory note Amberson had failed to honor ($916,257.00), and, in a Supplemental Award, the certificates of deposit that McAllen had pledged as security collateral for the Jefferson Bank loan

($1,750,301.21). *Id.* at 90–91. Based on the parties' stipulations, the Arbitrator further awarded the McAllen Parties $2 million in attorneys' fees. *Id.* at 66–67, 81–82.

The McAllen Parties moved to confirm the Arbitration Award and Supplemental Award (collectively, the "Award") in Hidalgo County district court, and a hearing was set for July 21, 2020. *See Amberson*, 2021 WL 4760387, at *7. The night before the scheduled hearing, ANR filed for bankruptcy followed by Mr. Amberson filing for personal bankruptcy on July 23, 2020. Based on these filings, the ongoing dispute between the Amberson Parties and the McAllen Parties was removed from the Hidalgo County district court to the Southern District of Texas bankruptcy court, and then transferred to the Western District of Texas bankruptcy court. *Id.*

## II.    Bankruptcy Proceedings

Once transferred, the McAllen Parties moved to confirm the Award, and Amberson Parties moved to vacate parts of the Award. Judge Gargotta heard the competing motions and issued an oral ruling confirming the entire Award on September 11, 2020, followed by a Final Judgment based on the confirmed Award, which was entered on September 23, 2020. ECF No. 2-2 at 23–31.

On October 23, 2020, the McAllen Parties filed an Adversary Proceeding against Amberson, asserting that the four categories of damages awarded in the Arbitration Award discussed above were nondischargeable debts under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). *Id.* at 4–22. Thereafter, the McAllen Parties moved for summary judgment arguing that the Arbitration Award and Final Judgment were entitled to preclusive effect in the Adversary Proceeding based on the principles of collateral estoppel. *Id.* at 104–34.

In response, Amberson argued that, given the "reasoned award" language in the Arbitration Award, the Bankruptcy Court was "not bound by the Arbitrator's statements or reasoning," but had "the discretion to reconsider them." *Id.* at 385. Thus, the Arbitration Award did "not preclude

Amberson from introducing new evidence to defend himself from the McAllen Parties' efforts to deny him a discharge." *Id.* at 385. Amberson asserted that he did not fully litigate the issues bearing on dischargeability during the Arbitration because he made a strategic decision to focus on the strength of his contractual claim for a contingent fee award rather than defending against the McAllen Parties' claims:

> Amberson had no incentive in the Arbitration to fully litigate the elements of fraud or defalcation. The character of the debts was of little concern during the Arbitration. Amberson had no incentive to differentiate between McAllen's contract and equity claims, which he largely does not dispute, and McAllen's fiduciary duty, fraud, and theft claims, which did not serve to meaningfully enhance the damages in the Award. At the time of the Arbitration, Amberson had no reason to differentiate between the character of Amberson's claims because the damages would be the same.

*See id.* at 398–99. Amberson did not contest liability as to any of the claims with which the Motion for Summary Judgment was concerned, but asserted that the Award on its own was insufficient to render those debts nondischargeable. *Id.* at 401–02. Amberson argued that he "deserve[d] an actual opportunity to litigate the[] issues [bearing on dischargeability] in a proceeding where their importance is so magnified." *Id.* at 399.

On May 7, 2021, Judge Gargotta issued a memorandum opinion and order granting the McAllen Parties' motion as to Fraudulent Litigation Expenses. ECF No. 2-2 at 668–703 (Memorandum Opinion); *id.* at 704–05 (Order). In doing so, Judge Gargotta considered two issues: (1) whether the Arbitration Award had preclusive effect under collateral estoppel, and, if so, (2) whether the Award substantiated that damages owed to the McAllen Parties in connection with the False Litigation Expenses qualified as nondischargeable debts under §§ 523(a)(2)(A), (a)(4), and/or (a)(6). *Id.*

Addressing the collateral estoppel issue, Judge Gargotta applied both the state and the federal tests, as is required to establish collateral estoppel for the purposes of nondischargability

proceedings. *See id.* at 682–90; 693–97; *Grogan v. Garner*, 498 U.S. 279, 284 (1991). Under Texas law, a party seeking to invoke collateral estoppel must establish: "(1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case." *In re Pancake*, 106 F.3d 1242, 1244 (5th Cir. 1997). The federal test provides that (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action. *RecoverEdge v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995) (citing *In re Davis*, 3 F.3d 113, 114 (5th Cir. 1993)).

The key difference between the two tests is the federal test's requirement that the issues at stake in the proceedings must be *identical*. *In re Horne*, No. ADV 10-5063-C, 2011 WL 350473, at *4 (Bankr. W.D. Tex. Feb. 2, 2011). Thus, the federal test requires the court to "examine the judgment rendered in the prior proceeding, together with the subsidiary facts actually litigated and necessarily decided, to determine whether the record contained sufficiently detailed facts and findings to apply to each of the elements of a § 523(a) claim." *In re O'Neill*, 260 B.R. 122, 127 (Bankr. E.D. Tex. 2001) (citing *In re Limbaugh*, 155 B.R. 952, 956 (Bankr. N.D. Tex. 1993)); *see also In re Skaja*, 313 B.R. 198, 202 (W.D. Tex. 2004) ("The application of collateral estoppel is relevant only when 'the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question with the same *prima facie* elements as the bankruptcy issue[.]'") (quoting *In re Dennis*, 25 F.3d 274, 278 (5th Cir. 1994)).

Applying the state-law test, the Bankruptcy Court "reject[ed] Amberson's argument that the legal issues addressed in the Arbitration Award—including McAllen's allegation that Amberson engaged in fraud and breach of fiduciary duty—were not fully litigated":

Amberson's argument that he "did not fully litigate his claims against McAllen" because he "sought to recover on the contingent fee agreement" does not diminish the fact that the Hidalgo County District Court referred all of the claims in the State Court Lawsuit to Arbitration. Amberson—who was a practicing attorney himself at the time of the Arbitration—knew or should have known that he had a duty to defend against all of the claims the McAllen Parties brought against him individually and the Amberson Firm, including the claims for fraud, breach of fiduciary duty, theft, and conversion. The McAllen Parties provided evidence that Amberson submitted briefing and presented evidence on those issues at Arbitration.

ECF No. 2-2 at 684–85. Indeed, based on the "ten-and-a-half-day arbitration involving four rounds of separate pre- and posthearing briefs, . . . submission of 325 exhibits covering 17 three-ring binders, and receipt of testimony of 16 live witnesses and one witness by agreed deposition video and transcript excerpts," the Bankruptcy Court concluded that the claims of fraud and breach of fiduciary duty were fully and fairly litigated. *Id.* (quotations omitted). The Bankruptcy Court further concluded that the facts were essential to the judgment in the first action, considering the "extensive descriptions of the facts, evidence, and testimony elicited" in the Arbitrator's 53-page Award. *Id.* at 685. Finally, the Bankruptcy Court found that the third element of collateral estoppel under Texas law—the identity of the parties—was satisfied as to both claims because the parties to the Adversary Proceeding were adversaries in the State Court Litigation and resulting Arbitration. Accordingly, the Bankruptcy Court concluded that collateral estoppel applied to the Arbitration under Texas law. *Id.*

Proceeding to the federal test, the Court granted summary judgment as to the award for Fraudulent Litigation Expenses, concluding that they were nondischargeable debts under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4), but denied the motion in all other respects. *Id.*

A.     **Nondischargeability under § 523(a)(2)(A) –Fraud**

Under § 523(a)(2)(A), obligations are nondischargeable if the debt is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false

pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or

an insider's financial condition[.]" For purposes of that section, "anything that counts as 'fraud'

and is done with wrongful intent is 'actual fraud.'" *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356,

360 (2016). In order to prevail on complaint under § 523(a)(2)(A), the creditor must show:

> (1) the debtor made a representation; (2) the debtor knew the representation was
> false; (3) the representation was made with intent to deceive the creditor; (4) the
> creditor actually and justifiably relied on the representation; and (5) the creditor
> sustained a loss as a proximate result.

*In re Saenz*, 899 F.3d 384, 394 (5th Cir. 2018).

The Bankruptcy Court observed that the Award's finding that the False Litigation Expenses

constituted fraud under Texas law recited the same prima facie elements as § 523(a)(2)(A). *See*

ECF No. 2-2 at 689. Specifically, the Arbitrator found:

> As to the 42 transactions at issue, Amberson made material misrepresentations to
> McAllen; Amberson knew the representations were false; Amberson intended
> McAllen to act in reliance on his false representations and to pay the 42 fraudulent
> payment requests; and McAllen actively and justifiably relied on Amberson's
> representations and McAllen and his entities suffered damage in the principal
> amount of $2,583,700.00.

*Id.* at 63; *cf. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41,

47 (Tex. 1998)) (setting forth elements of a claim for fraud in Texas: (1) a material representation

was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without

knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the

party acted in reliance; and (6) the party was injured as a result).

Given the identity of the fraud issues in the arbitration proceedings and the bankruptcy

proceedings, the Bankruptcy Court held that the Award satisfied the federal requirements of

collateral estoppel and supported a finding of nondischargeability with respect to the Fraudulent

Litigation Expenses:

> The facts stated in the Award meet the McAllen Parties' burden of proving by a preponderance of the evidence that the False Litigation Expenses are nondischargeable under § 523(a)(2)(A). . . . Because the finding of fraud on the False Litigation Expenses in the Award meets the *prima facie* elements for § 523(a)(2)(A), and ***because the Award contains extensive factual findings to support a claim for fraud***, the Court finds the False Litigation Expenses . . . are nondischargeable under § 523(a)(2)(A).

*Id.* at 688–89 (emphasis added). On the other hand, the Bankruptcy Court concluded that the Award did not "spell out" the elements of a fraud claim with respect to either the Jefferson Bank loan or the FCB loan. *Id.* at 691–92. Accordingly, the Bankruptcy Court declined to give the Award preclusive effect as to the nondischargeability of the damages awarded in connection with these loans under § 523(a)(2)(A). *See id.*

## B.     Nondischargeability under § 523(a)(4) – Breach of Fiduciary Duty

Section 523(a)(4) provides that a debt for "fraud or defalcation . . . while acting in a fiduciary capacity" is nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(4). The Fifth Circuit has stated, "[t]his bar to discharge reaches 'debts incurred through abuses of fiduciary positions . . . [and] involv[ing] debts arising from the debtor's acquisition or use of property that is not the debtor's." *In re Whittington*, 530 B.R. 360, 387 (Bankr. W.D. Tex. 2014) (citing *In re Harwood*, 637 F.3d 615, 620 (5th Cir. 2011)). Fraud in a fiduciary capacity under § 523(a)(4) requires "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong . . . and not implied fraud." *Whittington*, 530 B.R. at 388. There must be a showing of "wrongful intent." *Id.* Defalcation "may be used to refer to nonfraudulent breaches of fiduciary duty." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 276 (2013). As such, defalcation "includes a culpable state of mind requirement involving knowledge of, or gross recklessness in respect to, the improper nature of the fiduciary behavior." *Id.* at 267.

10

As for the McAllen Parties' claim for breach of fiduciary duty, the Arbitrator found that:

> Amberson as counsel owed numerous fiduciary duties to his clients, the McAllen Parties. In Texas, these include duties of loyalty; utmost good faith; candor; to refrain from self-dealing; to act with integrity of the strictest king; fair and honest dealing; full disclosure; undivided loyalty; honesty; to inform the client of matters material to the representation; and to inform the client of a conflict of interest. With regard to the 42 transactions addressed above . . ., Amberson breached his fiduciary duties owed McAllen.

ECF No. 2-2 at 63.

Given the attorney-client relationship between Amberson and the McAllen parties, the Bankruptcy Court found that "the Award establishe[d] Amberson had a fiduciary relationship with the McAllen Parties." *See id.* at 693–94 (citing *SMWNPF Holdings, Inc. v. Devore*, 165 F.3d 360, 365 (5th Cir. 1999)) (noting that, under Texas law, "[o]nce the parties enter into an attorney-client relationship, the attorney owes fiduciary duties to his client.") (citing *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)). Based on the Arbitrator's findings as to the False Litigation Expenses, the Bankruptcy Court held that the Award further established that Amberson had committed fraud in his fiduciary capacity:

> Amberson—in his capacity as the McAllen Parties' counsel—wrote letters and sent faxes on firm letterhead, communicated through his law firm paralegal, sent e-mails, and submitted invoices for $2,583,700.00 in non-existent litigation and arbitration expenses. . . . [He] made up dollar amounts for experts, included them in bills to McAllen as "reimbursable expenses," did not hold the monies in trust, and did not pay any of these amounts to the named experts. . . . Amberson's abuse of his position as the McAllen Parties' attorney placed him in a fiduciary position wherein he made forty-two "fraudulent payment requests" that he represented were for expenses in the Forest Oil Arbitration.

ECF No. 2-2 at 696–97 (alterations, quotations, and citations omitted). For these reasons, the Bankruptcy Court found that the award of damages in connection with the False Litigation Expenses was a nondischargeable debt under § 523(a)(4). *See id*. at 697.

As with the fraud exception, however, the Bankruptcy Court declined to extend the preclusive effect of the Award beyond the debt for Fraudulent Litigation Expenses, concluding that the Award did not contain sufficient factual findings as to Amberson's mental state concerning the dishonored promissory notes, the FCB loan, or the Jefferson Bank loan to establish fraud or defalcation under § 523(a)(4). *See id.* at 698–700.

## C.     Nondischargeability under § 523(a)(6) – Willful or Malicious Injury

Section 523(a)(6) provides that a debtor shall not receive a discharge from any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" Despite the Arbitrator's findings that Amberson's billing practices constituted a TTLA violation and conversion, the Bankruptcy Court concluded that the Award could not support nondischargeability under § 523(a)(6):

> The record does not provide factual findings regarding Amberson's mens rea or intent as to the False Litigation Expenses, FCB Loan, and Jefferson Bank Loan. On the whole, the Award does not include language to support a finding by this Court that Amberson had either a subjective substantial certainty of harm or that Amberson subjectively intended to cause harm to the McAllen Parties.

ECF No. 2-2 at 701–02. Accordingly, the Bankruptcy Court held that Award was not entitled to preclusive effect with respect to any of the McAllen Parties' claims under § 523(a)(6), including the award for False Litigation Expenses. *Id.* at 702.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear this appeal of the Summary Judgment Order pursuant to 28 U.S.C. §158(a)(1), which authorizes jurisdiction to hear appeals from final judgments, orders, and decrees of a bankruptcy court.[1]

---

[1] The McAllen parties correctly note that the Bankruptcy Court's partial grant of summary judgment was not a final order when Amberson filed the notice of appeal and thus that § 158(a)(1) was inapplicable. ECF No. 8 at 11 (citing *Coury v. Moss*, 529 F.3d 579, 581, 584 (5th Cir. 2008) (describing appeal from partial summary judgment as interlocutory)). Section 158(a)(3) authorizes jurisdiction over interlocutory orders "with leave of the court . . . ." 28

## ISSUE PRESENTED ON APPEAL

If an arbitration award includes a disclaimer expressly stating that its narrative summary of background events "does not constitute formal Findings of Fact and Conclusions of Law as might be entered by a trial court," does a bankruptcy court err by adopting the arbitrator's narrative as formal findings of fact to grant summary judgment as to nondischargeability?

## STANDARD OF REVIEW

A district court has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges. *See* 28 U.S.C. § 158(a). On appeal, a bankruptcy judge's conclusions of law are reviewed *de novo*, whereas findings of fact will not be set aside unless they are found to be clearly erroneous. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 503 (5th Cir. 2000). The district court reviews mixed questions of law and fact *de novo*. *Id*. With respect to arbitration proceedings, "[a]ppellate review of an order affirming or vacating an arbitration award is de novo." *Kemper Corp. -2- Servs., Inc. v. Comput. Scis. Corp.*, 946 F.3d 817, 821 (5th Cir. 2020). The court reviews discretionary decisions of the bankruptcy court for abuse of discretion. *See In re Mendoza*, 111 F.3d 1264, 1270 (5th Cir. 1997). A bankruptcy court abuses its discretion when "its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence." *In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008) (quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)).

---

U.S.C. § 158(a)(3). For appeals of interlocutory orders of a bankruptcy court to the district court, Bankruptcy Rule 8004 applies and requires the appellant to file both a notice of appeal and a motion for leave to appeal with the bankruptcy court. FED. R. BANKR. P. 8014(a)(2). While Amberson filed a Notice of Appeal in the Bankruptcy Court, he did not include a motion for leave as required by Rule 8014. *See* ECF No. 1-1 (Amberson Parties' Notice of Appeal). Rule 8014(d) provides that "[i]f an appellant timely files a notice of appeal under this rule but does not include a motion for leave, the district court or BAP may order the appellant to file a motion for leave, or treat the notice of appeal as a motion for leave and either grant or deny it." FED. R. BANKR. P. 8014(d) (emphasis added). While this appeal was still pending, however, the underlying bankruptcy proceedings concluded, and Judge Biery affirmed the final judgment entered in favor of the McAllen Parties. *See Amberson*, 2021 WL 4760387, at *12; *see also* ECF No. 10. Accordingly, the Bankruptcy Court's partial grant of summary judgment is now final.

## ANALYSIS

On appeal, Amberson argues that the Bankruptcy Court erred in granting summary judgment as to the nondischargeability of the False Litigation Expenses because it failed to defer to the Arbitrator's disclaimer that his reasoned award should not be treated as formal findings of fact and failed to make its own findings of fact to support dischargeability.[2] ECF No. 6 at 7.

Despite Amberson's assertion that bankruptcy courts must always make independent findings of fact to support a determination of nondischargeability,[3] the Supreme Court has confirmed that "collateral estoppel principles do indeed apply in discharge exception proceedings[.]" *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). Arbitration awards that have been reduced to judgment can be given preclusive effect by bankruptcy courts adjudicating objections to dischargeability. *See, e.g.*, *In re Horne*, No. ADV 10-5063-C, 2011 WL 350473, at *5 (Bankr. W.D. Tex. Feb. 2, 2011) (arbitration awards reduced to judgment in state court given preclusive effect). The Fifth Circuit has stated that "if the first determination of an issue occurred in an arbitration which afforded litigants the basic elements of adjudicatory procedure," a court "may find in a proper case that the arbitral award collaterally estops relitigation of the previously determined issues." *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir.

---

[2] Amberson also argues that reversing the Bankruptcy Court's order would be consistent with the principles of judicial economy because the claims that survived the motion for summary judgment would have to proceed to discovery and trial. ECF No. 6 at 12. The McAllen Parties observed that this argument "disregards the fundamental policy underlying the doctrine of collateral estoppel, namely, to prevent duplicative litigation." ECF No. 8 at 49 (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (explaining that "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication") (citation omitted)). Given that the underlying bankruptcy proceedings have concluded and the final judgment in favor of the McAllen Parties has been affirmed, however, Amberson's argument as to judicial economy is now moot. *See Amberson*, 2021 WL 4760387, at * 12; *see also* ECF No. 10.

[3] Amberson's reliance on *Matter of Luce*, 960 F.2d 1277 (5th Cir. 1992) for this proposition is misplaced. *Luce* did not involve the application of collateral estoppel; rather, it addressed the sufficiency of the bankruptcy court's findings of fact following a bench trial in the adversary proceeding. *See Luce*, 960 F.2d at 1285 ("Federal Rule of Civil Procedure 52(a), which applies in adversary proceedings under Bankruptcy Rule 7052, requires a bankruptcy court to 'find the facts specially' in all cases tried upon the facts without a jury.").

1991) (quoting *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985)).

The application of collateral estoppel from arbitral findings is not required but is a matter within the broad discretion of the court. *In re Clem*, 583 B.R. 329, 340 (Bankr. N.D. Tex. 2017) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979) and *Universal Am. Barge*, 946 F.2d at 1137). Collateral estoppel applies in bankruptcy courts only if the first tribunal has made "specific, subordinate, factual findings on the identical dischargeability issue in question— that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from [the first tribunal]'s record." *Dennis*, 25 F.3d at 278. To determine whether a case was "fully and fairly litigated" for the purposes of collateral estoppel, a court must have "record evidence demonstrating that the state court conducted a hearing at which [the creditor] was put to its evidentiary burden." *Pancake*, 106 F.3d at 1245. The Fifth Circuit has explained that, given the range of factors that might bear on the fairness of collateral estoppel, the broad discretion afforded to courts "keeps the risk of prejudice at an acceptable level, at least when the arbitral pleadings state issues clearly, and the arbitrators set out and explain their findings ***in a detailed written memorandum***. *Universal Am. Barge Corp.*, 946 F.2d at 1137 (emphasis added).

Amberson insists that he "does not contend that a court may *never* rely on an arbitration award to establish the facts necessary for a finding of nondischargeability." ECF No. 6 at 12 (emphasis added). Instead, he argues:

> [I]n the (admittedly) unusual instance in which an arbitration award expressly states it does not constitute findings of fact or conclusions of law, a court cannot simply ignore that express limitation. The reviewing court cannot know what prompted such a disclaimer, and the same principles of deference that would permit adoption of the arbitrator's factual findings require that such a disclaimer be honored and not ignored.

15

*Id.* While Amberson treats the language in the Arbitration Award as shrouded in mystery, its source and purpose are clearly laid out in the Award itself:

> The parties' arbitration agreement does not speak to the type of Award to be entered. ***The parties requested and agreed to a "reasoned Award,"*** which is to be more detailed than a short-form "standard Award" but is not in the form of formal Findings of Fact and Conclusions of Law as might be entered by a court as to every element of a claim and every defense.

*Id.* (emphasis added).

The purpose of this "disclaimer" is not to caution future tribunals against relying on the substance of the Award, but to establish the *form* in which the Award must be presented to survive a motion to vacate the Award. Both the Federal Arbitration Act ("FAA") and the Texas General Arbitration Act ("TAA") provide that a reviewing court may vacate an arbitration award where the arbitrators "exceeded their powers."[4] *See* 9 U.S.C. § 10(a)(4); TEX. CIV. PRAC. & REM. CODE § 171.088(a)(3)(A). An arbitrator may exceed her authority by failing to provide an award in the form required by an arbitration agreement. *See W. Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258 (9th Cir. 1992) (arbitrators exceeded their power when they failed to make findings of fact and conclusions of law as the contract between the parties required); *see also Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 859 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("[D]etermining whether an award is a 'reasoned award' is a question of form, not substance.").

---

[4] The parties' engagement letters do not specify whether the FAA or the Texas Act applies to arbitration proceedings arising out of Amberson's representation of the McAllen Parties in the Forest Oil matter. *See* ECF No. 2-2 at 345–46, 358, 369. While the letters do state that the representation agreements are governed by Texas law, the Texas Supreme Court has held that a Texas choice-of-law provision will not be construed to select the Texas Act to the exclusion of the FAA unless the clause specifically excludes the application of federal law. *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127–28 (Tex. 1999). The FAA applies to contracts involving or affecting interstate commerce. 9 U.S.C. § 2; *see In re Godt*, 28 S.W.3d 732, 737 (Tex. App. 2000) (declining to apply the FAA because there was no evidence that the attorney/client agreement related to interstate commerce). It is unclear to the Court whether the engagement letters involving the Forest Oil matter involve or affect interstate commerce. In addressing the arbitrability of the Forest Oil matter, however, the Supreme Court of Texas treated cases that discuss the FAA and TAA as interchangeable because "[w]hether a case is governed by the [FAA] or the TAA, many of the underlying substantive principles are the same." *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008). Because there is no reason to believe that the FAA and the TAA diverge in their approaches to the different "forms" of arbitration awards, it is similarly appropriate in this case to treat cases involving the state and federal statutes interchangeably.

Absent an agreement to the contrary, an arbitrator issues a "standard award," which simply announces a result without any reasoning or explanation. *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011) (*United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960)); *Thomas v. Prudential Sec., Inc.*, 921 S.W.2d 847, 851 (Tex. App.—Austin 1996, no writ) ("[A]rbitrators need not specify the basis for their award."). "At the other end of the spectrum, the Arbitration Rules allow parties to request that the arbitrators make 'findings of fact and conclusions of law,' a relatively exacting standard familiar to the federal courts." *Cat Charter*, 646 F.3d at 844. A "reasoned award" is a term of art in arbitration—albeit, admittedly, not a particularly well-defined one—that generally requires "something short of findings and conclusions but more than a simple result." *Id.* (citing *Sarofim v. Tr. Co. of the W.*, 440 F.3d 213, 215 n.1 (5th Cir. 2006)); *see also YPF S.A. v. Apache Overseas, Inc.*, 924 F.3d 815, 820 (5th Cir. 2019) (A "reasoned award" is "a somewhat ambiguous term left undefined by the FAA."). The Fifth Circuit has held that "an arbitrator issues a reasoned award when 'the arbitrator laid out the facts, described the contentions of the parties, and decided which of the two proposals should prevail.'" *Apache Overseas*, 924 F.3d at 821 (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012)).

Amberson does not cite a single case that limits collateral estoppel to arbitration awards that are presented in the form of findings of fact and conclusions of law. Nor, in support of his proposition that such "disclaimers" are intended to "limit how future tribunals may use or interpret a narrative portion of an opinion or order," does he cite a single case involving a confirmed arbitration award or the application of collateral estoppel.[5] *See* ECF No. 6 at 10. To the contrary,

---

[5] All of the cases Amberson cites for their language cautioning the reader not to construe the factual background as findings of fact are entirely inapposite given their pretrial procedural posture. *See, e.g.*, *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 513 (5th Cir. 2012) (describing allegations made in the pleadings); *Gonzalez v. U.S. Dep't of Com., Nat. Oceanic & Atmospheric Admin.*, 695 F. Supp. 2d 474,

many courts have given preclusive effect to reasoned awards, including in bankruptcy proceedings. *See In re Bellingham Ins. Agency, Inc.*, No. BAP.WW-008-1149-MKMJ, 2009 WL 7809010, at *4, 11 (B.A.P. 9th Cir. Apr. 6, 2009) (holding collateral estoppel applied to issues based on a "Final Reasoned [Arbitration] Award"); *In re Houng*, 499 B.R. 751, 757, 763, 775 (Bankr. C.D. Cal. 2013), *aff'd*, 636 F. App'x 396 (9th Cir. 2016) (holding debt was not dischargeable based, in part, on collateral estoppel from a reasoned arbitration award); *see also B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 666 (10th Cir. 2006) (affirming summary judgment giving preclusive effect to "Reasoned Award" because the arbitration panel "clearly articulate[d]" its findings on the issue).

The Fifth Circuit has likewise rejected the premise that only formal findings of fact and conclusions of law can be afforded preclusive effect, instead advising that "courts should use a case-by-case approach to determining the collateral estoppel effects of arbitral findings." *Universal Am. Barge*, 946 F.2d at 1137; *see also id.* (the "absence of written findings and reasons makes preclusion impossible unless necessarily implied from the nature of the claim and award") (citing Hulbert, *Arbitral Procedure and the Preclusive Effect of Awards in International Commercial Arbitration*, 7 INT'L TAX & BUS. L. 156, 197 (1989)). Lower courts in the Fifth Circuit have suggested that a reasoned award may be sufficient, though not necessary, for the application of collateral estoppel. *See In re Dean*, 620 B.R. 271, 280 (Bankr. N.D. Tex. 2020) (declining to give preclusive effect to interim finding that the creditor had not established its fraud-based claims, in part because the debtor "could have requested a reasoned award where the Arbitration Panel

---

506 (S.D. Tex. 2010), *aff'd*, 420 F. App'x 364 (5th Cir. 2011) (explaining that a timeline appended to summary judgment order was included "to help the reader of the main opinion follow the sequence of events"); *Costa v. SIB Mortg. Corp.*, 210 F.R.D. 84, 86 (S.D.N.Y. 2002) (noting that the plaintiffs' factual allegations are accepted as true in evaluating whether to grant class certification under Rule 23); *Tatum v. United States*, No. 10-510C, 2011 WL 2563335, at *1 (Fed. Cl. June 27, 2011) (describing allegations in the complaint in an order granting the defendant's motion to dismiss) *aff'd*, 463 F. App'x 920 (Fed. Cir. 2012).

would provide findings of fact to support its conclusions regarding [the creditor]'s fraud-based

claims"); *see also Autotrol Corp. v. J-F Equip. Co.*, 820 F. Supp. 293, 297 (N.D. Tex. 1993)

("[T]he failure of an arbitration panel to make detailed findings will not emasculate an award's

preclusive effect.").

By agreeing to a reasoned award rather than findings of fact and conclusions of law,

Amberson and the McAllen parties did select a more deferential standard for the purposes of

judicial review of the arbitration award. In other words, they demanded less of the Arbitrator than

they could have. But their choice set a floor, not a ceiling. Along the vast spectrum between a

standard award and findings of fact and conclusions of law, an arbitrator may exceed the minimum

requirements of a "reasoned award" by a great deal. Indeed, the 53-page, single-spaced Award

indicates that the Arbitrator did so here, given that courts frequently confirm much shorter and

less-detailed awards. *Cf. Rain CII Carbon*, 674 F.3d at 472 (eight-page arbitration award was

sufficiently reasoned to withstand vacatur); *Cat Charter*, 646 F.3d 836 (reversing district court's

vacatur of a six-paragraph arbitration award and noting that, "had the parties wished for a greater

explanation, they could have requested that the Panel provide findings of fact and conclusions of

law"); *Green v. Ameritech Corp.*, 200 F.3d 967 (6th Cir. 2000) (reversing district court's vacatur

of a six-page arbitration award and reasoning that "although the arbitrator's opinion was minimal,

it was nevertheless adequate to satisfy the terms of the agreement," which required that the

arbitrator "explain" his decision).

Still, because a reasoned award is subject to less scrutiny than findings of fact and

conclusions of law for the purposes of vacatur, it is possible for an award to be sufficiently

reasoned to survive vacatur *and* insufficient for the purposes of collateral estoppel. In fact, it was

on this very basis that the Bankruptcy Court declined to give preclusive effect to the Arbitrator's

awards relating to the FCB loan, the Jefferson Bank loan, or the promissory notes under the fraud and breach-of-fiduciary duties exceptions to dischargeability. *See* ECF No. 2-2 at 690–93; 697– 701. Likewise, the Bankruptcy Court concluded that the Award did not contain sufficient factual findings as to Amberson's state of mind to support nondischargeability of any of the awards of damages under § 523(a)(6). *Id.* at 701–02. At bottom, Amberson asks the Court to answer in the abstract a question that can be resolved only in context—whether a bankruptcy court errs by giving preclusive effect to an arbitrator's "reasoned award" in evaluating issues of dischargeability depends on the sufficiency of the factual findings in the award.

Having considered the Arbitration Award, the Summary Judgment Order, and all of the arguments and authorities presented by the parties in their briefs, the Court concludes that the Bankruptcy Court did not err in finding that the Award contained sufficient detail and analysis of the McAllen Parties' claims for fraud and breach-of-fiduciary duty to be entitled to preclusive effect. The Bankruptcy Court correctly applied the elements of collateral estoppel to the Award and determined that, with respect to the False Litigation Expenses, the McAllen Parties had already sufficiently established every element of their claims under §§ 523(a)(2) and 523(a)(4) of Bankruptcy Code.

In concluding that the elements of nondischargeability had already been fully and fairly litigated, the Bankruptcy Court did not simply rely on the Arbitrator's ultimate factual findings but looked to the underlying evidence the Arbitrator reviewed in making his findings:

> At the ten-and-a-half-day arbitration, the parties appeared and presented evidence on the facts underlying the fraud claim. Regarding the fraud claim in relation to the False Litigation Expenses, the Arbitrator "place[d] great weight on the assessment of the credibility of Amberson in his almost full week of testimony."
>
> . . . .

> The Arbitrator reviewed documentary evidence, including letters and/or invoices from the Amberson Firm to McAllen requesting the funds that comprise the False Litigation Expenses. . . . Those letters and invoices were also included as evidence attached to the McAllen Parties' MSJ. Amberson's testimony, which is quoted in the Award, concedes he owed [hundreds of thousands of dollars in connection with the fraudulent bonds and retainers]. At Arbitration, Amberson testified there "was no written order" and he "knew there was not a written order" from the Harris County District Court to support his representation to the McAllens that the District Court Judge required a deposit in the court registry of $250,0000 to pay Harris County arbitrator compensation. Amberson testified at Arbitration that "none of the experts asked for" the $1,683,700.00 that he billed for expert retainer fees. Amberson also testified these monies were spent elsewhere, not held in trust for McAllen, and not returned to McAllen when the monies were not needed for anticipated retainers.

ECF No. 2-2 at 689–90 (citations omitted); *see also id.* at 694–97. In short, the Bankruptcy Court conducted a painstaking review of the findings in the Arbitrator's detailed written memorandum and the record to ensure that the McAllen Parties had been put to their evidentiary burden in the arbitration proceedings, and properly exercised its broad discretion to conclude that some of the issues bearing on dischargeability had been fully litigated and others had not. The law does not require more. *See Pancake*, 106 F.3d at 1245; *Universal Am. Barge Corp.*, 946 F.2d at 1137.

Finally, even assuming that the adoption of the factual findings in the Award constituted an error—which it did not—bankruptcy court errors are generally reversible only to the extent that they affect a party's substantial rights. *See* FED. R. BANKR. R. 9005 (noting that Rule 61 of the Federal Rules of Civil Procedure applies in the cases under the Code); FED. R. CIV. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). The McAllen Parties correctly note that Amberson's briefing does not dispute:

(1)     that the issues at stake in the dischargeability proceeding—fraud and breach of fiduciary duty—were identical to the issues involved in the arbitration;

(2)     that the issues were actually litigated in the prior action; or

(3)     that the determination of the issue in the prior action was a part of the judgment in that earlier action.

ECF No. 8 at 32–33. These are the criteria for affording a prior judgment preclusive effect in a nondischargeability action. *Dennis*, 25 F.3d at 278. Amberson's briefing does not identify any infirmities in the Award's factual findings or the underlying Arbitration that cast doubt on the Bankruptcy Court's conclusion that the False Litigation Expenses were a nondischargeable debt. Amberson's mere disappointment with the Summary Judgment Order is not a reason to reverse it.

Courts afford strong deference to arbitrative tribunals. *McIlroy v. PaineWebber, Inc.*, 989 F.2d 817, 820 (5th Cir. 1993). Amberson suggests that the only way to defer to the Arbitration Award in this case is to set it aside entirely, based, paradoxically, on the deferential standard of review chosen by the parties. ECF No. 6 at 11. Amberson's theory of deference is contrary to our "national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). To endorse it would undermine the interests of judicial economy that both arbitration and collateral estoppel are intended to serve. *Stage Stores*, 477 S.W.3d at 854 (highlighting the "guiding principal . . . that arbitration is designed as an efficient, less-costly alternative to judicial litigation"); *Cat Charter, LLC*, 646 F.3d at 846 ("To [require] an entirely new proceeding would insufficiently respect the value of arbitration and inject the courts further into the arbitration process than Congress has mandated."); *Parklane Hosiery*, 439 U.S. at 326 ("Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party . . . and of promoting judicial economy by preventing needless litigation."). The Court finds no reason to do so here.

## CONCLUSION

The Court has carefully considered the record, the arguments and authorities presented in Amberson's opening brief (ECF No. 6) and the response (ECF No. 8) and reply (ECF No. 9) thereto, and has conducted a *de novo* review of the Bankruptcy Court's Summary Judgment Order with respect to the issue raised on appeal. For the foregoing reasons, the decision of the Bankruptcy Court is **AFFIRMED**. A final judgment pursuant to Rule 58 will follow.

It is so **ORDERED**.

**SIGNED** this 19th day of August, 2022.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE